**E-FILED**
Friday, 05 January, 2007  03:50:28 PM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | 0╫-30002 |
| | ) | |
| v. | ) | Case No. 06-30002 |
| | ) | |
| CURRY OFFICE SUPPLY, INC., | ) | FILEI |
| | ) | |
| Defendant. | ) | JAN - 4 2007 |
| | ) | |

JOHN M. WATERS, Clerk
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

## PLEA AGREEMENT AND STIPULATION OF FACTS

Pursuant to Rule 11(c)(1)(A) and (B) of the Federal Rules of Criminal Procedure, the
United States of America, by Rodger A. Heaton, United States Attorney for the Central District
of Illinois, and Patrick J. Chesley, Assistant United States Attorney, and the defendant, Curry
Office Supply, Inc., personally and by the defendant's attorneys, Charles J. Northrup and Jon G.
Noll, hereby enter into this plea agreement.

1.     This document contains the complete and only plea agreement between the
United States Attorney for the Central District of Illinois and the defendant.  This agreement
supersedes and replaces any and all prior formal and informal, written and oral, express and
implied, plea agreements between the parties.  No other agreement, understanding, promise, or
condition between the United States Attorney for the Central District of Illinois and the
defendant exists, except as set forth in this plea agreement.

2.     This plea agreement is binding only upon the United States Attorney for the
Central District of Illinois and the defendant.  It does not bind any United States Attorney outside
the Central District of Illinois, nor does it bind any state or local prosecutor.  In addition, the plea

agreement does not bind the Tax Division of the United States Department of Justice or the Internal Revenue Service of the United States Department of the Treasury.

3.     This agreement is made pursuant to Federal Rule of Criminal Procedure 11(c)(1)(A) and (B), and therefore if the Court does not accept the recommendations of the parties, the defendant does not have the right to withdraw its plea of guilty.

## CHARGE, ELEMENTS, AND PENALTIES

4.     The defendant will plead guilty to a one count Information, in which the defendant is charged with negligently causing illegal pollution discharges to protected waters, in violation of Title 33, United States Code, Sections 1311(a) and 1319(c)(1)(A).

5.     The defendant has read the charge to which the defendant is pleading guilty, and the charge has been explained to the defendant by the defendant's attorneys.  Furthermore, the defendant fully understands the nature and elements of the crime to which the defendant is pleading guilty.  To sustain the charge of negligently causing illegal pollution discharges to protected waters, the United States must prove the following propositions beyond a reasonable doubt:

First, the defendant negligently caused the discharge of a pollutant into a water;

Second, the pollutant was discharged from a point source;

Third, the water was a water of the United States; and

Fourth, the discharge was made without an NPDES permit.

6.     The defendant understands and agrees that the offense to which it shall plead guilty carries the following potential penalties:

·      a fine of at least $2,500 but not more than $25,000 per day of violation;

{S0529200.1  12/18/2006 CJN BLF}

2

 ·        up to 5 years of probation; and

 ·        a $125 mandatory special assessment.

7.      The defendant further understands that upon violation of any of the terms of the defendant's probation, its probation may be revoked and the defendant may be subject to additional punishment.

## DEFENDANT'S OBLIGATIONS

## WAIVERS:

### Indictment

8.      The defendant will waive any right he may have to be indicted by a grand jury.

### Waiver of Right of Appeal from Conviction and Sentence

9.      The defendant is aware that federal law, specifically, Title 28, United States Code, Section 1291, affords a defendant a right to appeal a final decision of the district court and that federal law, specifically, Title 18, United States Code, Section 3742, affords a defendant a right to appeal the conviction and/or sentence imposed.  Understanding those rights, and having thoroughly discussed those rights with the defendant's attorneys, the defendant knowingly and voluntarily waives the right to appeal any and all issues relating to this plea agreement and conviction and to the sentence, including any fine or restitution, within the maximum provided in the statutes of conviction, and the manner in which the sentence, including any fine or restitution, was determined, on any ground whatever, in exchange for the concessions made by the United States in this plea agreement.

### Waiver of Right to Collateral Attack

10.      The defendant also understands that it has a right to attack the conviction and/or sentence imposed collaterally on the grounds that it was imposed in violation of the Constitution

or laws of the United States; that it received ineffective assistance from its attorneys; that the Court was without proper jurisdiction;  or that the conviction and/or sentence was otherwise subject to collateral attack.  The defendant understands such an attack is usually brought through a motion pursuant to Title 28, United States Code, Section 2255.  The defendant and the defendant's attorneys have reviewed Section 2255, and the defendant understands its rights under the statute. Understanding those rights, and having thoroughly discussed those rights with the defendant's attorneys, the defendant knowingly and voluntarily waives its right to collaterally attack the conviction and/or sentence.  The defendant's attorneys have fully discussed and explained the defendant's right to attack the conviction and/or sentence collaterally with the defendant.  The defendant specifically acknowledges that the decision to waive the right to challenge any later claim of the ineffectiveness of the defendant's attorneys was made by the defendant alone notwithstanding any advice the defendant may or may not have received from the defendant's attorneys regarding this right.  Regardless of any advice the defendant's attorneys may have given the defendant, in exchange for the concessions made by the United States in this plea agreement, the defendant hereby knowingly and voluntarily waives its right to collaterally attack the conviction and/or sentence.  The rights waived by the defendant include his right to challenge the amount of any fine or restitution, in any collateral attack, including, but not limited to, a motion brought under Title 28, United States Code, Section 2255.

**Agreements**

11.     The defendant will plead guilty to the one count Information filed in this case.

12.     The defendant agrees to the imposition of a $50,000 fine and to be placed on probation for three years.

13.     As a condition of this entire plea agreement, the defendant will take all

appropriate steps to ensure that its owners, employees and agents cooperate fully with federal law enforcement officials. Such cooperation does not include efforts by the defendant to force, require or coerce its current or former owners, employees or agents to waive their Constitutional rights.

14.    Such cooperation includes the defendant encouraging and taking all appropriate steps to have its owners, employees and agents provide complete and truthful information to federal law enforcement officials regarding the defendant's criminal conduct in this case and everything they know or have reason to believe about the criminal conduct of others.

15.    Such cooperation further includes the defendant encouraging and taking all appropriate steps to have its owners, employees and agents provide any and all documents and physical evidence of any kind in their possession or under their control that relates to the offense charged in the Information and/or the involvement of others in such offense.

16.    Such cooperation further includes the defendant encouraging and taking all appropriate steps to have its owners, employees and agents provide complete and truthful testimony to any grand jury, trial jury, judge, or magistrate in any proceeding in which they may be called to testify by the government.

17.    Failure to cooperate fully with federal law enforcement officials by the "Agent" mentioned in the Information or by any owner, employee or other agent who is charged with a criminal offense arising out of the facts alleged in this Information, shall not serve as grounds to allege a breach of defendant's obligations under this pleas agreement.

18.    The defendant further agrees that if the defendant violates the terms of this plea agreement the United States has the option to declare the plea agreement null and void. In the event the United States exercises its option to declare the plea agreement null and void, the

{S0529200.1 12/18/2006 CJN BLF}

5

United States will be completely released from all of its obligations under this plea agreement and the United States will be free to seek to vacate the defendant's conviction and/or sentence, and to reinstate any previously dismissed charges against the defendant, Curry Ready Mix & Builders' Supply, Inc., Currry Ice & Coal of Springfield, Inc., and/or Lippold & Arnett, Inc., or to seek the defendant's resentencing.     However, in the event the United States exercises its option to declare the plea agreement null and void, the defendant will not be allowed to withdraw from any previously accepted guilty plea. The defendant also agrees to waive any and all double jeopardy rights, and the applicable statute of limitations should the United States seek to reinstate any charges against the defendant or seek to have the defendant resentenced.

19.     Whether or not the defendant has violated the terms of the plea agreement shall be determined by the Court.  The burden of proof shall rest with the United States to establish by a preponderance of the evidence that the defendant violated the terms of the plea agreement.

20.     The defendant further understands and agrees to pay the mandatory $125 Special Assessment for the one count Information to which the defendant is entering a plea of guilty as required under Title 18, United States Code, Section 3013.  The defendant agrees to pay this mandatory special assessment at or before the time of sentencing by delivering a check or money order made payable to the United States District Court and understands that it will be required to do so as a condition of this plea agreement.  The failure to comply with this requirement, however, will not constitute grounds for the defendant to withdraw any plea of guilty.

## THE UNITED STATES ATTORNEY'S OBLIGATIONS

21.     At the time of sentencing the United States Attorney for the Central District of

Illinois agrees to recommend that the district court sentence the defendant to pay a $50,000 fine and serve three years of probation. The United States Attorney for the Central District of Illinois will not oppose an early termination of probation, so long as the defendant has paid the full amount of any fine imposed and complied with all other conditions of probation.

22.     The United States Attorney for the Central District of Illinois also agrees to move to dismiss the charges against Curry Ready Mix & Builders' Supply, Inc., Currry Ice & Coal of Springfield, Inc., and Lippold & Arnett, Inc., filed in case number 06-30002. The defendant acknowledges that these charges, which the United States Attorney for the Central District of Illinois is agreeing to dismiss, were brought in good faith and not for any vexatious or frivolous reason on the part of the United States.

23.     The United States Attorney for the Central District of Illinois agrees to bring no additional civil or criminal charges in the Central District of Illinois against the defendant, Curry Ready Mix & Builders' Supply, Inc., Currry Ice & Coal of Springfield, Inc., and Lippold & Arnett, Inc.,  relating to or arising from the offenses charged in this Information.

24.     The United States Attorney for the Central District of Illinois will fully apprise the court and the United States Probation Office of the nature, extent, and value of the defendant's cooperation.

## \SENTENCING

25.     The defendant understands that the Court will calculate the defendant's offense level and criminal history category under the United States Sentencing Guidelines, and the Court will use those calculations to arrive at an advisory sentencing range under the Guidelines. The defendant understands that the Court must consider the advisory Sentencing Guidelines range when imposing sentence. The Court also must consider the factors listed under Title 18, United

States Code, Section 3553(a) in determining the actual sentence to be imposed.  Based upon its consideration of all the relevant factors, the Court may impose a sentence above or below the Sentencing Guideline range that was determined.

26.     The defendant understands and agrees that at the time of sentencing, the Court will not be bound by any recommendation made by any party, and that the Court will be free to impose whatever sentence it deems appropriate up to the statutory maximum.  The defendant understands and agrees that the defendant will not be allowed to withdraw the defendant's guilty plea because of an objection to the calculation of the Sentencing Guidelines or to the Court's sentencing findings or rulings or because the defendant receives a sentence higher than that recommended under the plea agreement.

27.     The defendant understands that there is no agreement as to the defendant's criminal history or criminal history category, and that the defendant's criminal history could alter the defendant's offense level if, for example, the defendant is a career offender or if the instant offense was a part of a pattern of criminal conduct from which the defendant derived a substantial portion of the defendant's income.  Since the defendant's criminal history cannot be determined prior to the completion of the presentence investigation, the United States and the defendant reserve the right to argue at sentencing for, or oppose, an upward or downward departure for over-representation or under-representation of criminal history pursuant to United States Sentencing Guideline Section 4A1.3.

28.     The United States reserves the right, in its sole discretion, to make a motion at the time of sentencing for a sentence below the sentencing guideline range pursuant to United States Sentencing Guidelines Section 5K1.1 of the Sentencing Guidelines and from any mandatory minimum sentence pursuant to Title 18, United States Code, Section 3553(e), if the defendant

provides substantial assistance in the investigation or prosecution of others for criminal offenses. The extent of any such recommendation will depend solely upon the United States' evaluation of the nature, extent, and value of the defendant's assistance, including the defendant's truthfulness.

29.    The defendant and the defendant's attorneys acknowledge that they have reviewed, and the defendant understands, the possible applications of United States Sentencing Guidelines Sections 5H.1 through Section 5H1.12, Sections 5K.2.0 through Section 5K2.21, and other grounds for imposing sentences below the applicable Sentencing Guideline range. The defendant acknowledges that it has fully discussed any potential basis for such lower sentences with the defendant's attorneys. The defendant agrees that no other bases for such lower sentences will be raised by the defendant at sentencing other than the specific bases mentioned in this agreement, except the defendant may raise any basis that is based upon facts that occur after the date the plea agreement is signed by the defendant.

## FACTUAL BASIS

30.    The defendant will plead guilty because the defendant is in fact guilty of the charge contained in the Information. In pleading guilty to that charge, the defendant stipulates to and admits to the following facts:

Beginning in or about March or April 2003 and continuing until approximately the beginning of June 2003, the defendant had an authorized agent acting within the scope of his authority ("Agent") who engaged in and conducted the defendant's business at property located at 3600 North Dirksen Parkway, Springfield, Illinois ("Curry facility").

Part of the Agent's duties included the proper removal and disposal of approximately 2,000,000 gallons of liquid that had accumulated in an excavation on the Curry facility. This liquid ("boron contaminated water") contained the pollutant boron that had leached out of

approximately 35,000 tons fly ash waste and bottom ash waste from coal combustion from a power plant. Such ash had previously been deposited into the excavation at the Curry facility.

The boron contaminated water could not be discharged by a point source into a water of the United States without first acquiring a National Pollutant Discharge Elimination System ("NPDES") permit. No NPDES permit was ever obtained that would allow such a discharge of the boron contaminated water into a water of the United States.

An unnamed stream ("the Curry Stream") flowed West through the Curry facility.  A second stream flowed North just West of the the Curry facility.  The Curry Stream joined with this second stream ("Joint Stream") either just on the Curry facility property or immediately adjacent to it.  The water in both the Curry Stream and the Joint Stream flowed approximately one mile downstream and emptied into the Sangamon River, which was a navigable water. Both the Curry Stream and the Joint Stream were relatively permanent standing or continuously flowing bodies of water, each with a significant nexus to the Sangamon River.  The Curry Stream and the Joint Stream were waters of the United States.

Throughout at least 2002 and 2003, the Agent was responsible for overseeing and managing work related to the excavation on the Curry facility, including dewatering it in the Spring and Summer of 2003. According to the defendant, it believed that the Agent would comply with all known environmental laws, regulations and requirements, due to the Agent's prior involvement with matters related to the excavation, including attendance at meetings with representatives of the Illinois Environmental Protection Agency.  According to the defendant, it never communicated verbally or otherwise that the Agent should disregard any law or requirement and, to its knowledge,  none of its agents or employees, other than those previously identified by the United States of America during the course of its investigation, had any

knowledge of the following described discharges caused by the Agent.

The defendant does not dispute that the government could produce evidence that the following discharges were caused by its Agent as part of his efforts to remove and dispose of the boron contaminated water at the Curry facility. Beginning in or about March or April 2003 and continuing until approximately the beginning of June 2003, the Agent, on at least 20 days, caused the boron contaminated water from the excavation on the Curry facility to be discharged into the Curry Stream and the Joint Stream by one of the following means:

A. The Agent caused pumps and hoses to be installed at the Curry facility to pump the boron contaminated water out of the excavation. The Agent ordered that the boron contaminated water be pumped through a hose from the excavation to slopes adjacent to the Curry Stream and the Joint Stream. The boron contaminated water deposited onto the slope adjacent to the Curry Stream flowed into the Curry Stream and then into the Joint Stream. The boron contaminated water deposited onto the slope adjacent to the Joint Stream flowed into the Joint Stream.

B. The Agent caused a drainage ditch to be dug between the excavation and a lower parking lot at the Curry facility. The Agent had a discharge pipe installed at the bottom of this drainage ditch. The discharge pipe emptied onto a slope approximately 70 feet uphill from the Curry Stream.  The Agent ordered that a hose from the excavation pump the boron contaminated water directly into the drainage ditch where it flowed  into the discharge pipe and emptied onto the slope of the Curry Stream. The boron contaminated water then flowed down the slope into the Curry Stream and traveled approximately 600 feet where it entered the Joint Stream.

C. In or about March or early April 2003, the IEPA agreed to allow the defendant

and its agents, for purposes of dust control, to fill tanker trucks with the boron contaminated water and spread it on the upper and lower parking lots at the Curry facility. The IEPA allowed such applications on the condition that there would be no runoff containing the boron contaminated water from either parking lot that would enter the Curry Stream. The Agent caused or allowed there to be applications of the boron contaminated water to the parking lots that did result in runoffs entering the Curry Stream and then the Joint Stream.

D. The Agent, on some occasions, ordered that the tanker trucks that were being filled with the boron contaminated water be allowed to overflow into the drainage ditch. Such boron contaminated water eventually flowed into the Curry Stream and then into the Joint Stream.

Beginning in or about March or April 2003 and continuing until approximately the beginning of June 2003, the Agent ordered that the boron contaminated water at the Curry facility be pumped out of the excavation 24 hours a day, even though little or none of the boron contaminated water could be spread on the parking lots at night because trucks were parked there.

By the early part of June 2003, the defendant's Agent had caused a substantial portion of 2,000,000 gallons of boron contaminated water from the excavation at the Curry facility to be discharged into the Curry Stream and the Joint Stream.

The defendant was negligent by failing properly to supervise the Agent and by failing to insure that the boron contaminated water was properly removed from the excavation and did not enter a water of the United States unless a NPDES permit for such discharge was obtained.

## **WAIVER OF CONSTITUTIONAL RIGHTS**

31.     The defendant understands that by pleading guilty the defendant surrenders the

following rights among others:

a.      The right to plead not guilty or to persist in a plea of not guilty if already made.  If the defendant persisted in a plea of not guilty to the charges, the defendant would have the right to a public and speedy trial.

b.      The right to a trial by jury.  The trial could be either a jury trial or a trial by the judge sitting without a jury.  The defendant has an absolute right to a jury trial.  If the trial is a jury trial, the jury would be composed of twelve persons selected at random.  The jury would have to agree unanimously before it could return a verdict of either guilty or not guilty.  The jury would be instructed that the defendant is presumed innocent, and that it could not convict the defendant unless, after hearing all the evidence, it was persuaded that the United States had met its burden of proving the defendant's guilty beyond a reasonable doubt.

c.      The right to the assistance of counsel.  The defendant has the right to be represented by an attorney at every stage of the proceedings and, if the court finds the defendant is unable to afford an attorney, one will be appointed to represent the defendant at no cost to the defendant.

d.      The right to confront and cross-examine adverse witnesses.  At a trial, the United States would be required to present its witnesses and other evidence against the defendant.  The defendant would be able to see and hear those government witnesses and  the defendant's attorneys would be able to cross-examine them.

e.      The right to present evidence or to decline to do so at trial.   The defendant's counsels could present witnesses and other evidence on the defendant's behalf.  If the witnesses for the defendant refused to appear voluntarily, their attendance could be required through the subpoena power of the court.

{S0529200.1  12/18/2006 CJN BLF}

32.     The defendant understands that by pleading guilty the defendant is waiving all the rights set forth in the prior paragraphs. The defendant's attorneys have explained these rights to the defendant and the consequences of the waiver of those rights.

**AGREED:**

**Defendant's Attorneys:**

33.     We have discussed this plea agreement fully with our client, and we are satisfied that our client fully understands its contents and terms. No threats, promises, or representations have been made, nor agreements reached, express or implied, to induce our client to plead guilty other than those stated in this written Plea Agreement. We have reviewed with our client United States Sentencing Guidelines Sections 1B1.3 and 1B1.4 (relevant conduct).

Date: _12-26 - 06_

Charles J. Northrup
Attorney for Curry Office Supply, Inc.,

Jon G. Noll
Attorney for Curry Office Supply, Inc.,

**Defendant:**

34.     I have read this entire Plea Agreement carefully and have discussed it fully with my attorneys. I fully understand this Agreement, and I agree to it voluntarily and of my own free will. I am pleading guilty because I am in fact guilty, and I agree that the facts stated in this Agreement about my criminal conduct are true. No threats, promises, or commitments have been made to me or to anyone else, and no agreements have been reached, expressed or implied,

{S0529200.1 12/18/2006 CJN BLF}

14

to influence me to plead guilty other than those stated in this written Plea Agreement.  I am satisfied with the legal services provided by my attorneys.  I understand that by signing below I am stating I agree with everything stated in this paragraph, and I am accepting and entering into this Plea Agreement.

Date: _____

_____
Authorized Agent
Curry Office Supply, Inc.,
Defendant

**United States:**

35.    On behalf of the United States of America, I accept and agree to this Plea Agreement.

Date: **12/29/06**

RODGER A. HEATON
UNITED STATES ATTORNEY

_____
Patrick J. Chesley
Assistant United States Attorney

{S0529200.1  12/18/2006 CJN BLF}